*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN DANELLE ROBINSON,

Plaintiff-Appellee,

v

PATRICK JEROME MARCULEWICZ,

Defendant-Appellant.

UNPUBLISHED
February 5, 2019

No. 344803
Sanilac Circuit Court
Family Division
LC No. 17-037485-DC

Before: MURRAY, C.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order awarding plaintiff primary physical custody of the parties' minor child, JM. We vacate the order and remand for further proceedings.

## I. BACKGROUND AND PROCEDURAL HISTORY

On December 13, 2017, when JM was just over 2 years old, plaintiff filed a motion for primary physical custody and child support, which was referred to a Friend of the Court (FOC) referee for a hearing. In the interim, the trial court ordered that JM reside with plaintiff and that defendant exercise parenting time with JM every other weekend. The hearing before the FOC referee took place over the course of three days, and both plaintiff and defendant testified and presented numerous witnesses.

Plaintiff and defendant met in 2011 and, shortly after their relationship began, plaintiff and her daughter from a previous relationship moved into defendant's home. The couple continued to cohabitate and plaintiff became pregnant with JM. The couple jointly decided to move to an area with better schools and defendant purchased a three-bedroom home for the family. JM was born shortly after the couple moved into the new home. During the relationship, plaintiff was a homemaker and defendant was employed as a machinist, often working extensive hours and overtime. Defendant provided materially for plaintiff and the children. Outside of these facts, there was little agreement on what occurred between the parties and the children.

Plaintiff testified that after JM was born defendant did not help care for the baby and that she was the primary caregiver. She estimated that as the child got older, defendant would interact with JM for approximately 15 minutes per day. She contended that defendant spent the majority of his time in the garage drinking alcohol. Defendant denied these allegations and testified that when he arrived home from work he would spend most of his time with JM. He testified that he played with, fed, and helped bathe the child, although he admitted he did not often change his diaper. He testified that he did not drink alcohol often and was only a social drinker.

Plaintiff moved from defendant's home on December 1, 2017, and moved in with her mother and stepfather. She did not inform defendant she was leaving and defendant discovered she left by reviewing his in-home security videos. After moving out, plaintiff did not allow defendant to see JM for approximately six weeks until the court ordered a temporary visitation schedule. According to plaintiff, she did not allow defendant to see the child because he had threatened to take JM away from her, but defendant denied this. Defendant testified that he asked to see the child "almost every day," but plaintiff refused. Shortly after the parties separated, defendant's new girlfriend moved into his home, and her teenage son spent some weekends there. The girlfriend was present for all of defendant's parenting-time exchanges and weekends.

Plaintiff described her living situation as "temporary." In the home, she slept on the couch while JM and her daughter each had their own rooms, as did plaintiff's mother and stepfather. Since the separation, plaintiff obtained part-time work as a veterinary receptionist. She hoped to move into her own home by the fall. At the time of the hearing, defendant continued to pay plaintiff's phone bill, car payment, and car insurance.

Defendant testified that he had concerns about JM's speech development because JM knew only a few words and did not talk. According to defendant, plaintiff refused to have JM tested because she said he was "fine," and she would not allow him to take the child to be tested. Plaintiff admitted that she and defendant discussed that JM might have a speech disorder and agreed that defendant suggested that the child be tested. During one of defendant's parenting-time weekends, he recorded videos of JM speaking to plaintiff on the phone, which were entered into evidence at the hearing.

After the hearings, the referee analyzed the statutory factors in the Child Custody Act (CCA), MCL 722.21 *et seq.*, and then recommended that plaintiff be awarded primary physical custody The order also recommended child support and indicated that defendant should continue to exercise parenting time on alternating weekends. Defendant objected and the trial court conducted a de novo hearing on July 18, 2018. Ruling from the bench, and refusing to consider any additional new evidence, the trial court adopted most of the referee's findings and granted joint legal custody to both parties and physical custody to plaintiff, with alternate weekend parenting time for defendant.

## II. ANALYSIS

Defendant contends that the trial court erred by applying the preponderance of the evidence standard after finding that an established custodial environment existed with both

parents. He also argues that the trial court erred in its application of the statutory best-interest factors set forth in MCL 722.23. Additionally, he argues that the trial court erred when it denied his request to present new, live evidence at the de novo hearing. We hold that the trial court abused its discretion when it declined, at the de novo hearing, to admit or consider new test results concerning JM's speech. Accordingly, we remand for a de novo hearing.

## A. STANDARD OF REVIEW

The proper standard of proof in child custody cases was recently outlined by this Court in *Lieberman v Orr*, 319 Mich App 68, 76-77; 900 NW2d 130 (2017):

> All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue.
>
> The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law.

The applicable burden of proof presents a question of law that is reviewed de novo on appeal. [Quotation marks and citations omitted.]

## B. DE NOVO HEARING

We first turn to the issue of the sufficiency of the de novo hearing, as we deem that issue dispositive of this appeal. We agree with defendant that the trial court erred when it refused without explanation to allow him to present new evidence at the de novo hearing.

Under the Friend of the Court Act, MCL 552.501 *et seq.*, the trial court may designate a referee to hear motions on domestic relations matters. MCL 552.507(2)(a). However, the act does not relieve "the circuit court of its duty to review a custody arrangement once the issue of a child's custody reaches the bench." *Harvey v Harvey*, 470 Mich 186, 193; 680 NW2d 835 (2004). MCL 552.507 provides, in relevant part:

> (4) The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party.

-3-

(5) A hearing is de novo despite the court's imposition of reasonable restrictions and conditions to conserve the resources of the parties and the court if the following conditions are met:

(a) The parties have been given a full opportunity to present and preserve important evidence at the referee hearing.

(b) For findings of fact to which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the referee *and to supplement that evidence with evidence that could not have been presented to the referee*. [Emphasis added.]

The court rules similarly provide that "[a] party may obtain a judicial hearing on any matter that has been the subject of a referee hearing and that resulted in a statement of findings and a recommended order . . . ." MCR 3.215(E)(4). MCR 3.215(F) further provides, in relevant part:

(2) To the extent allowed by law, the court may conduct the judicial hearing by review of the record of the referee hearing, but the court must allow the parties to present live evidence at the judicial hearing. The court may, in its discretion:

(a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;

(b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;

(c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing;

(d) impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court.

The trial court is free to consider a referee's report and recommendation "if it also allows the parties to present live evidence." *Dumm v Brodbeck*, 276 Mich App 460, 465; 740 NW2d 751 (2007), citing MCR 3.215(F)(2), and MCL 552.507(5)(b) and (6).

As MCR 3.215(F)(2) states, while the trial court may conduct the judicial hearing by review of the record of the referee hearing, "it *must* allow the parties to present live evidence at the judicial hearing." (Emphasis added.) "The term 'must' indicates that something is mandatory." *Vyletel-Rivard v Rivard*, 286 Mich App 13, 25; 777 NW2d 722 (2009). Here, defendant's attorney informed the court that plaintiff had the child tested in May 2018 and the test indicated that his speech was nine months' deficient. He argued that this demonstrated plaintiff's inability to care for the child and undermined both plaintiff's testimony and the testimony of several of plaintiff's witnesses who testified that JM's speech was normal. Defendant made an offer of proof of the report and indicated that defendant would testify about the report and JM's continued speech issues if "if the Court would desire." The trial court's

-4-

denial of the offer of proof or the opportunity to hear defendant's testimony on the subject without explanation was in contravention of the court rules.

We recognize that MCR 3.215(F)(2)(d) allows the court to use its discretion to "impose . . . reasonable restrictions and conditions to conserve the resources of the parties and the court." Further, the trial court may preclude a party from introducing new evidence, but that instruction is tempered by the restriction that the trial court may do so *unless there is an adequate showing that the evidence was not available at the referee hearing.*" MCR 3.215(F)(2)(c) (emphasis added). As the testing allegedly took place in May 2018, which was after the referee hearings concluded, defendant put forth a prima facie showing that the evidence did not exist at the time of the referee hearing. And this is important here, because under the statute a hearing is de novo "if the . . . conditions" of MCL 552.507(5) are met; one such condition is that "the parties are afforded a new opportunity . . . to supplement [evidence from the referee hearing] with evidence that could not have been presented to the referee." MCL 552.507(5)(b). Again, the evidence defendant wished to present was not in existence during the referee hearing and so it could not have been presented to the referee. We conclude that the trial court's refusal to allow the presentation of new evidence was a clear legal error, particularly when it was done without explanation.

## C. ESTABLISHED CUSTODIAL ENVIRONMENT

Although our decision regarding the de novo hearing resolves this appeal, we briefly address the issue raised regarding the standard of proof required in deciding the matter on remand.

As it did in this case, when deciding whether to change custody, the circuit court must preliminarily determine whether an established custodial environment exists so that it can apply the proper standard of proof. If there is an established custodial environment, as the trial court found here, the circuit court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). On the other hand, "if no custodial environment exists, the trial court may modify a custody order if the petitioning party can convince the court by a preponderance of the evidence that it should grant a custody change." *Hayes v Hayes*, 209 Mich App 385, 387-388; 532 NW2d 190 (1995).[1]

---

[1] The threshold determination the circuit court must make before deciding custody is whether an established custodial environment exists. *Pierron v Pierron*, 282 Mich App 222, 244; 765 NW2d 345 (2009) (*Pierron I*). "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). "[T]he focus is on the circumstances surrounding the care of the [child] in the time preceding trial, not the reasons behind the existence of a custodial environment." *Hayes*, 209 Mich App at 388. "Our Supreme Court has described an established custodial environment as 'a custodial relationship of a

Defendant argues that the trial court applied the wrong standard of proof—preponderance of the evidence—since it found that an established custodial environment existed with both parents, which would necessitate the standard of proof to be clear and convincing evidence. The trial court specifically concluded:

> It is the determination of the Court that the established custodial environment of [the child] is with both parents. Where no established custodial environment exists with one parent apart from the other, custody maybe [sic] decided by . . . a preponderance of the evidence that the proposed custodial arrangement would be in the best interest of the children.

Thus, as is permitted, the trial court found that an established custodial environment existed with both parents. *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001); *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007).

But with that finding comes a higher burden of proof, as we held long ago that the clear and convincing burden of proof applies when a proposed change in custody would alter the custodial environment existing with both parents. See *Jack v Jack*, 239 Mich App 668, 671; 610 NW2d 231 (2000). If, on the other hand, the proposed modification would not result in a change in the custodial environment JM has with both parties, then the clear and convincing evidence standard would not apply. See *Pierron v Pierron*, 486 Mich 81, 86; 782 NW2d 480 (2010) (*Pierron II*), citing *Brown v Loveman*, 260 Mich App 576, 595–596; 680 NW2d 432 (2004); *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013). Therefore, application of the preponderance standard would remain correct so long as the trial court continues to conclude that the proposed change would not alter JM's custodial environment with both parents. *Pierron*, 486 Mich at 93 (holding that a "proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests.").[2]

### III. CONCLUSION

The trial court erred when it violated both MCL 552.507(5) and MCR 3.215(F). Because we cannot conclude that the evidence of JM's speech testing would not have influenced the trial court's weighing of the statutory factors, its credibility determinations, and its ultimate

---

significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence.' " *Pierron I*, 282 Mich App at 244, quoting *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981).

[2] The trial court did not fully explain why it found that the established custodial environment existed with both parents, and whether the schedule existing under the temporary order had any impact on that decision.

disposition of this case, we remand so that the trial court may conduct a true de novo hearing in accordance with the statute and the court rules.[3]

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[3] Defendant additionally argues that the trial court's findings with respect to three of the best-interest factors under MCL 722.23 were against the great weight of the evidence. We need not address this argument in light of our determination that it is necessary to remand this case for a de novo hearing.